# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **Criminal Action No.** |
| **v.** | ) | **1:14-CR-0117-AT-GGB** |
| | ) | |
| **BONNIE MONIQUE YOUN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## SENTENCING MEMORANDUM AND MOTION FOR A DOWNWARD VARIANCE ON BEHALF OF DEFENDANT

COMES NOW, defendant Bonnie Monique Youn, by and through undersigned counsel, and hereby files this Sentencing Memorandum And Motion For A Downward Variance to assist the Court in determining a fair and just sentence, as follows.

## I.    PRELIMINARY STATEMENT

As set forth below, it is respectfully requested that the Court grant a downward variance and impose a sentence of probation, and impose no fine. This request is based upon the underlying facts of the case, applicable case law, the advisory U.S. Sentencing Guidelines ("U.S.S.G."), and the important considerations set forth in 18 U.S.C. §3553(a). As set forth more fully below, a downward variance and a sentence of probation and no fine is appropriate based on the following:

- Ms. Youn accepts responsibility for her misconduct;

- The offense conduct is an aberration;

- Ms. Youn did not profit from the criminal offense, but was simply trying to help an existing client;

- Ms. Youn has, for many years prior to the misconduct, engaged in extensive community service and works of charity;

- The history and characteristics of Ms. Youn indicate that she poses no threat to the public and is at no risk for recidivism;

- The §3553 factors warrant the imposition of probation and no fine.

Ms. Youn genuinely regrets the misconduct which led to her plea; he recognizes the consequences of her actions and the wrongfulness of her conduct. Nonetheless, this memorandum does not seek to excuse the conduct underlying Ms. Youn's plea. To the contrary, the purpose of this memorandum is to provide the "totality of the circumstances" surrounding Ms. Youn and the offense to enable the Court to determine a fair and just sentence.

## II.    MS. YOUN'S PERSONAL BACKGROUND

### A.    Family and Personal Background

Ms. Bonnie Youn attended Brown University where she earned her Bachelor's degree in English in 1991.  She received Brown University's Asian American Alumni of Distinction Award in 2013.  She attended Boston University School of Law, where she received her Juris Doctor in 1994.  Moving to the metro-

Atlanta area in 1994, she began her career working as a staff attorney for the U.S. Court of Appeals, 11th Circuit.  She is married to her husband, Frank McDonald, a Professor of Chemistry at Emory University, and most of her immediate family now reside in Georgia.

Ethnically Korean but born in the Philippines, she began practicing as an immigration attorney in 1997 and founded her own law practice, the Youn Law Group.  Her work focused on representing companies and individuals in preparing both employment and family-based immigration cases, assisting clients in obtaining U.S. lawful permanent residence and citizenship.  She has also represented clients in removal proceedings, often pro bono.

Ms. Youn is a recognized Asian American & Pacific Islander (AAPI) community leader and immigration advocate in Georgia.  In March 2013, she was selected as a White House Cesar Chavez Community Champion of Change for her work in Immigration Reform.  She has also received many accolades for her work in the local Georgia communities, including Most Influential Asian American by the Georgia Asian Times (2013), recognition as an Outstanding Citizen by the Georgia House of Representatives, and serving as the 2013 Keynote Speaker at the Center for Pan Asian Community Services (CPACS) annual TEAWalk, leading thousands of participants on a solidarity walk.

Ms. Youn has worked tirelessly to provide a voice for immigrants and AAPI communities.  She led teams that organized the 2013 and 2014 Georgia AAPI Legislative Day, gathering the largest number of AAPIs in history at the state Capitol to meet and lobby elected officials.  In 2012, she worked closely with the White House Initiative on AAPIs (WHIAAPI) to organize its Southeast Regional Action Summit at Emory University in Atlanta.  The Summit brought together over 500 participants to meet federal agency officials, culminating in a town hall meeting discussing concerns about immigration, healthcare and mental health issues, small business, and housing needs.  In 2013, she worked closely with teams to bring the Executive Director of the WHIAAPI to Gwinnett County, and meet with various elected Georgia State officials and non-profit organizations to build better communications between federal agencies.

**B.    Ms. Youn has been a mentor and a guiding light to individual attorneys.**

Ms. Youn's dedication and influence has shaped many of the local attorneys in the Atlanta area.[1]

- **Alina Lee, Attorney**: "Bonnie is one of my role models and she has mentored me both with regards to life and the practice of law."

- **Peter Yang, White House Champion of Change 2014, MPH Candidate 2017, Department of Epidemiology Rollins School of Public Health, Emory University:**  "Your Honor, I write to you today on behalf of Ms. Youn as a fellow White House Champion of

---

[1]    The character witness letters quoted in this memorandum are attached as Exhibit 1 to this memorandum.

4

Change and advocate for the underserved.  The path of service I have led, where I have had the privilege of serving my community and eliciting positive social change would not have occurred without the genuine kindness and encouragement that I was shown by Ms. Youn during every step of the way.  I will say, in no uncertain terms that my story is but one of many that serve as a direct testament to the lives that have been changed by her immense character."

- **Tara Lee Adyanthaya, J.D., MBE:**  "My life is better because of Bonnie is in it, and I know that is true for so many others.  In addition to her significant pro bono professional endeavors, she makes time to take underprivileged children to Chuck E. Cheese so they can feel like other kids; enlists friends to five children the opportunity to play sports and participate in other activities that would otherwise be out of reach; and treats all people with respect and kindness.  She has been a tireless advocate for the Asian-American and immigrant communities, helping to humanize often marginalized people.  She supports others in their advocacy efforts and mentors and supports other lawyers and students.  Bonnie is quick to smile and laugh and is someone her friends and family know they can count on when they need her.  She reminds me through her actions that I am not doing enough.  I wish you could know her as I do because she is so kind that it is impossible to know her and not want to good things for her."

- **Holly Geerdes, Attorney:**  "If anyone comes across Ms. Youn personally, the one thing that stands out above everything else is her heart, which carries over into her legal practice."

- **Leng Leng Chancey:**  "If I had to sum up in one word what my friend Bonnie means to me it would be, "hope".  She is like a beacon of light that is always shining hope onto others.  You could be drowning in the abyss, but Bonnie's ray of hope will help lead you to a clearer path.  In life, it is easy to give a handout, but it's not as easy giving a hand up, and Bonnie will often chose the latter."

- **Peter Yang, White House Champion of Change 2014, MPH Candidate 2017, Department of Epidemiology Rollins School of Public Health, Emory University:**  "As a colleague, I learned much from Ms. Youn.  Never have I met an individual who, despite having

had relatively few interactions, was so encouraging and invested in people who had done nothing for her."

- **Sara E. Hamilton, Attorney:** "Beyond the obvious work for the community, I want to add that Bonnie has been a great mentor and friend as I struggle myself as a young lawyer. She is generous with her time and warm with her advice. These qualities are difficult to find these days, as lawyers are understandably consumed with their own lives and our demanding profession. This ought to be the type of behavior we cherish and recognize in our community. I am extremely thankful to the help and advice Bonnie provided me and our community. In my six years knowing Bonnie and interacting with her personally, I have always found her to be honest, upright, and honorable. She is never quick to gossip or judge, and always willing to lend a supporting hand. She is entrusted with our organization's finances and information, and the information known about our community and our struggles. For these reasons, I sincerely hope the Court will take these personal experiences with Bonnie into account as it considers a fair and just resolution to this case."

- **Tim Hur:** "There are too many incidents to name to indicate her passion to help the indigent, the needy, the illiterate, the poor, families with children being torn apart, her family, her husband and finally, her friends. She has stood by me during my times of need and has always been an encouraging shoulder when I need her like an older sister. While I realize that I am just another Georgian – another American – writing a letter on behalf of Ms. Youn, I am one of many who believe that Ms. Youn is someone that our community needs because of her character, integrity and honesty."

- **Byung J. Pak, Attorney:** "We met through the local Asian American Bar Association, and she was one of the first people who welcome me to Atlanta. What struck me about Bonnie was that she was extremely nice and trusting. I am sure that many others who will be writing or appearing before you at sentencing will confirm this about her. While I do not know all of the details of the crime to which she pled, I am sure that her trusting nature and desire to help others contributed to her actions."

- **Cam T. Ashling, CFP, CAIA, Wealth and Business Advisor:** "Beyond this case, she was been a wonderful force for justice, an angel to the world, an inspiration to young people, a leader for leaders and a fighter for what it means to be strong amidst inequitable life challenges.  She is a champion for Good for a broken world that needs her.  Everybody who knows Bonnie respects her for her big heart to help people, for the meticulous work to organize people that keeps us together and gives us hope.  Bonnie means the world to us and to me; she is a personal Hero to mine and many other people because of strong character, integrity, honesty, judgment and hard work."

- **Robin H. Sangston, VP/Chief Compliance Officer, Cox:**  "As a person, there is not a kinder or more inclusive member of the Georgia Bar.   At my first GAPABA program I was one of a handful of Caucasian attendees, yet Bonnie was one of the first to greet me and make me feel welcome.  She has a generous spirit, a quick smile and a self-deprecating manner all of which make her easy to like.  Aside from any mistakes she may have made, I have to think that she has already suffered enough through her prosecution and will suffer from the suspension of her law license such that a significant fine would be unduly harsh under the circumstances."

- **Shalamar Parham, Attorney:**  "Over time, I had the opportunity to establish my own personal relationship with Bonnie.  I personally know Bonnie to be one of the first to offer her help when she is able, trustworthy, dependable, friendly and just a kind person in general. Bonnie has always had a good spirit about her during the time that I have known her.  Also she has always the first to congratulate others on their professional and personal accomplishments."

## C. Ms. Youn is dedicated to improving the legal community.

Ms. Youn's dedication and commitment is community based. She seeks to pave the way, not just for existing attorneys, but for future attorneys as well.

- **Angela Hsu, Vice President Legal, Duke Realty Corporation:** "Bonnie has become very active in the Asian Community, always

tirelessly working for those causes in which she believes. She has balanced her community work with long hours at the office, but seems always have time for both. She generally gets the tasks that no one else wants to perform because everyone knows she will work hard and get things done."

- **Charles Kuck, Attorney at Law:** "I also know Bonnie as a passionate advocate for her clients and for the community. She has been nationally recognized as a strong voice for immigration reform for Asian Americans and is a dedicated activist to reform our broken immigration system. Her voice will continue to be needed going forward."

- **Guanming Fang, Lawyer:** "I have observed Bonnie's devotion to her clients, the community and her families and friends. She is always quickly to help someone in need and always willing to mentor young lawyers. Bonnie has contributed countless hours to GAPABA and is a constant figure in community activities that GAPABA organizes."

- **Alina Lee, Attorney**: "Bonnie has not only been a glue that brings together the Asian American legal community but she is the person that reminds us of all the unnoticed good things in life and how fortunate we are to have sincere friends."

- **Cam T. Ashling, CFP, CAIA, Wealth and Business Advisor:** "You can't even count the hundreds and thousands of volunteer hours she has given and sacrificed to our community. I call her the Energizer Bunny. Her spirit to serve others is tremendous and a powerful force for good to further the Kingdom for the glory of God. I truly believe that I can't say that for most people who "do charity" for profit."

- **Chong J. Kim, Attorney at Law**: "Bonnie has encourage and inspired me to do more to serve our community. She has received well deserved accolades and awards for her tireless pro bono work on behalf of the underrepresented immigrant community."

- **David Kahng, Corporate Attorney:** "Over the years, Bonnie has worked tirelessly to help other members of the community, including other attorneys. For example, over the years, I have personally seen

Bonnie work very hard to help organize events for the GAPABA for the benefit of other attorneys and community members.  In October 2015, Bonnie led GAPABA's participation in TEA Walk 2015 with the theme of "Together Empowering Asian-Americans."   Also, Bonnie was a key organizer for GAPABA's fundraise for Nepal earthquake relief in September 2015 which raised thousands of dollars for people in need in Nepal."

- **Natsu Taylor Saito, Professor of Law, Georgia State Law University:**  "Bonnie's energy and dedication were contagious, and her tireless work ensured the organization's survival and success.  Despite being very young, Bonnie's leadership skills were evident and she quickly became a director and the president of GAPABA.  What we saw in her was her willingness to work tirelessly to support other attorneys and the community, as well as her competence in attending to detail and following through on commitments."

- **Natsu Taylor Saito, Professor of Law, Georgia State Law University:**  "Bonnie Youn has dedicated her life, personal and professional, to serving one of the most vulnerable sectors of our community.  She stepped up at a time when there were precious few attorneys available to the Asian Pacific American Community in Georgia, and for more than two decades she has consistently and generously shared her time and talents with those in need .  I consider Bonnie to be a great asset to the Georgia Bar, and I hope that she will soon be able to resume her work and her contributions as a practicing lawyer."

## D.   Ms. Youn is a tireless and compassionate advocate for her clients.

Ms. Youn's dedication and self-sacrifice for her clients is legend among the legal community.

- **Chong J. Kim, Attorney at Law**: "I have referred all my clients to Bonnie for immigration matters.  I have complete confidence in her professionalism, legal abilities, ethics, and expertise.  She works very hard and diligently for every client.  I would retain Bonnie if I needed

an immigration lawyer.  I will continue to refer clients to Bonnie when she is allowed to practice law after her probationary period."

- **Holly Geerdes, Attorney:**  "In addition to her big heart that carries over into her legal practice, Ms. Youn is regarded as an expert in her legal community.  This reputation was built on many years of helping clients and lawyers represent their clients through the immigration legal process.  At no time was Ms. Youn ever thought or treated as someone who could work around the law.  Many of us referred cases to Ms. Youn because she was always honest, hard-working, diligent, and never went outside the boundaries of the law."

- **Robert K. Woo, Jr., Attorney:**  "Equally impressive is Bonnie's commitment to pro bono work and her empathy for her clients, which goes above and beyond that of most lawyers I know.  One case from a few years ago illustrates well just how much Bonnie cares for her clients.  In 2013, Bonnie called me to see if I could loan her any car booster seats that my girls had outgrown.  Bonnie wanted the booster seats so that she could temporarily reunite a family separated by the legal system- and then take six kids to Six Flags Over Georgia.  I learned that the parents of these six children were both incarcerated the father on criminal charges and the mother because she was facing deportation charges.  The local Nigerian-American community helped to find temporary homes, but unable to find a family who could take on all six children, the community ended up dividing the children and sending them to two different families.  This separation was devastating to all of them, but especially to the youngest children who had lost their parents and their protective siblings within a matter of weeks.  Although Bonnie already represented the mother pro bono in her deportation proceedings -itself a large investment of time and resources- her heart went out to the children.  And so out of her own pocket, Bonnie decided to rent a van so that she could collect all six children and drive them to south-central Georgia to see their mother at the Irwin County Detention Center, nearly 200 miles away.  All she needed from me were booster seats.  A few weeks later, Bonnie and her husband again rented a van and took all six kids to Six Flags for a day, so that they could forget their troubles and be children for a while.  The trip also included a stop at the grocery store on the way back to the children's temporary homes, because they had complained of not getting enough to eat there."

- **Nadine J. Kaslow, PhD, ABPP, Professor, Vice Chair for Faculty Development and Chief Psychologist (Grady), Former President, American Psychology Association:** "Ms. Youn is one the most passionate advocates for the rights of immigrants and for immigration reform that I have ever met. Compassionate, dedicated, smart, thoughtful. And hardworking, she is a highly ethical attorney who evidences the utmost of integrity. Ms. Youn is a community servant par excellence."

- **Holly Geerdes, Attorney:** "I have never met anyone that passionately and tirelessly works for and defends those in need, asking for nothing in return. More times than I can count, Ms. Youn has helped those in need that cannot afford an attorney. While lawyers are recommend to do pro bono work, Ms. Youn takes that recommendation to heart and goes above and beyond the call."

- **Donna M. Wong, Retired Asst. Dean Campus Life and Director, Office of Multicultural Programs & Services Emory University**: "Bonnie not only has the breadth of specific knowledge about community and civic issues pertaining to Asian American immigrant, refugee, and income inequality issues, she also has a dedicated track record of serving the underrepresented populations and being a voice on their behalf. Bonnie tirelessly works toward inclusion of communities often overlooked. She has helped and advised, often pro bono, the metro Atlanta low income and minority communities, assisting in adoption, family unification, domestic abuse, business, and other complex family matters."

- **Aparna Bhattacharyya**: "My most recent memories of her include her advocating in the community to help the children of one of her clients receive donations of toys, clothing, and food for the Christmas holidays while her client was detained and not able to be with her children."

- **Angela Hsu, Vice President Legal, Duke Realty Corporation:** "It is my hope that she will continue to work as an attorney after her two years of probation have passed. There are not many lawyers who care as deeply about her clients as Bonnie does; it would be a great loss to

11

our legal community to not have Bonnie working on behalf of legal clients."

- **Byung J. Pak, Attorney:** "But what her activities demonstrate is Bonnie's deep desire and passion to stand up for injustice and to fight for those who lack a voice in our community.  Of course, her standing as an attorney and her ability to counsel others is deeply intertwined with her identity and purpose in life.  I know that this ordeal has taken a tremendous toll on Bonnie and Frank.  She has suffered significant punishment through the loss of her reputation, her law license, and the fear of the unknown – factors which the Guidelines do not take into account."

- **Nadine J. Kaslow, PhD, ABPP, Professor, Vice Chair for Faculty Development and Chief Psychologist (Grady), Former President, American Psychology Association:**  "Ms. Youn is someone who consistently goes above and beyond the call of duty for her clients and for her profession.  There is no question that she cares deeply about helping others. She is incredibly generous with her time and has always been willing to give pro bono service to her clients and bar association groups."

## III.   THE SENTENCING GUIDELINES

### A.   The Court's Sentencing Discretion

In 2005, the U.S. Supreme Court confirmed that the trial court has substantial discretion when imposing a sentence. United States v. Booker, 543 U.S. 220, 233 (2005). The Sentencing Guidelines should be treated only as a "starting point," and the Court "must then consider all the [18 U.S.C.] § 3553(a) factors and then undertake an individualized assessment based on the facts presented." United States v. Johnson, 567 F.3d 40, 50 (2d Cir. 2009); see also United States v.

<u>Preaceley</u>, 628 F.3d 72, 84 (2d Cir. 2010) (Guidelines are "only . . . a starting point" and court must "craft an appropriate sentence taking full account of 'the history and characteristics of the defendant.' 18 U.S.C. § 3553(a)(1)"). The District Court "may **not** presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and the defense." <u>United States v. Cavera</u>, 550 F.3d 180, 189 (2d Cir. 2008) (emphasis supplied). "District judges are, as a result, generally free to impose sentences outside the recommended range." <u>Id</u>.

Specifically, the Court stated in <u>Booker</u> that it has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." <u>Booker</u>, 543 U.S. at 233<u>.</u> The Court further explained that this discretion includes utilizing all available information when arriving at its sentence determination, as the law provides that:

> [N]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

<u>Id</u>. at 251 (<u>citing</u> 18 U.S.C. §3661). The Court further held the sentencing guidelines are not mandatory, but rather merely one factor to be considered at sentencing. <u>Id</u>. at 264.

As provided by statute, this Court must impose a sentence "sufficient, but not greater than necessary" to fulfill the purposes of sentencing. See 18 U.S.C.

§3553(a). In the post-<u>Booker</u> era, rather than focusing only on the sentencing guidelines when imposing a sentence, the trial court must impose a "reasonable" sentence that consider all of the factors set forth in 18 U.S.C §3553.[2]

Courts have repeatedly recognized that application of the Guidelines in securities fraud cases can result in advisory sentencing ranges that are unreasonable and inappropriately high. In <u>United States v. Adelson</u>, 441 F. Supp. 2d 506, 515 (S.D.N.Y. 2006), a securities fraud case involving material misstatements which artificially inflated a company's stock price, Judge Rakoff found that the loss amount, combined with other enhancements, resulted in "calculations under the guidelines [that] have so run amok that they are patently absurd on their face." Judge Rakoff thus concluded that the "Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and the human being who will bear the consequences." <u>Id</u>. Similarly, in <u>United States v. Parris</u>, 573 F. Supp. 2d 744 (E.D.N.Y. 2008), a "pump and dump" stock scheme, Judge Block found <u>Adelson</u>'s criticism of the Guidelines persuasive, noting that the Guidelines are frequently criticized for the "'piling-on of points.'" <u>Id</u>. at 745 (quoting <u>Adelson</u>). After reviewing sentences in other significant fraud

---

[2] After <u>Booker</u>, the Supreme Court emphasized that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines is reasonable." <u>See e.g.</u> <u>Nelson v. United States</u>, 555 U.S. 350, 352 (2009).

prosecutions such as the Enron, WorldCom, and Computer Associates cases in which the amount of loss was over $1 billion, Judge Block concluded that that the defendants' conduct was "simply not in the same league," and imposed sentences of 60 months "in the face of an advisory Guidelines range of 360 to life." Id. at 753-54 (listing table of sentences in recent fraud prosecutions); see also United States v. Mueffelman, 400 F. Supp. 2d 368, 377-78 (D. Mass. 2005) (noting that "issues concerning the blameworthiness of a defendant found guilty of fraud are more complex than simply measuring the amount of the loss" and imposing a below-guidelines sentence).

**B.      Consideration of the Factors in 18 U.S.C. §3553(a)**

Section 3553(a) of Title 18 of the United States Code states:

(a)      Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider

> (1)      the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2)      the need for the sentence imposed

>> (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>> (B)      to afford adequate deterrence to criminal conduct;

15

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-

(i) issued by the Sentencing Commission . . .

(5) any pertinent policy statement

(A) issued by the Sentencing Commission…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As set forth below, Ms. Youn respectfully requests that the Court exercise its broad discretion and downwardly depart from the guideline range and impose a probationary sentence. This would be "sufficient, but not greater than necessary," to fulfill the purposes of sentencing. See 18 U.S.C. §3553(a). As set forth below, such a sentence is warranted based on the following:

(1)     the history and characteristics of Ms. Youn, including (a) her extensive community service, and (b) the fact that she poses no threat to the public and is at little risk for recidivism; and

(2)     Ms. Youn has accepted responsibility for her misconduct.

**1.      18 U.S.C. §3553(a)(1): "[T]he nature and circumstances of the offense and the history and characteristics of the defendant"**

Section 3553(a)(2)(B) requires the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Ms. Youn is devoted, hard-working person with no prior criminal record who will avoid misconduct in the future.

Notwithstanding the present case, Ms. Youn has conducted herself with integrity and has set an example for others in the community to follow:

- **Charles Kuck, Attorney at Law:**   "I consider her actions an aberration in an otherwise excellent legal career in providing superior legal advice and counsel far above that normally encountered in our very narrow and complicated field of law."

- **David Kahng, Corporate Attorney:** "I have always admired Bonnie for her dedication and passion to help others which never appears to wane.  Her desire to help others has long ago convinced me that is a compassionate person of great integrity and character.  For example, I know that Bonnie has accepted responsibility for her mistakes and has not sought to deflect blame to others."

- **Cam T. Ashling, CFP, CAIA, Wealth and Business Advisor:**  "In the whole 16 years, I have never seen Bonnie do ANYTHING that would put her character, integrity or honesty at risk."

Indeed, these testaments to her conduct and integrity conclusively establish that this criminal violation is an aberration.

Even when the realities of her mistakes and this consequences of this investigation and case became clear, Ms. Youn continued to conduct herself with the same respect for herself, others and the law that she has otherwise exemplified throughout her career.

- **Carolina Antonini, Attorney at Law:** "Mrs. Youn has earned mercy. She has handled herself during the prosecution of this case with grace, humility and dignity. She never spoke about the investigation or the prosecution. She never uttered a derogatory word for those were prosecuting her. She always expressed her belief in our justice system. I admire her composure during this trying time. Mrs. Youn has accepted responsibility and expressed remorse. She has lamented the negative impact her situation has on those who rely and believe in her and on the good efforts she made towards the advancement of minorities and immigrants."

Regarding the offense, Ms. Youn accepts full responsibility for her misconduct as noted in the presentence investigation report. She regrets what she did and understands that there is no legal or moral excuse for her actions. Ms. Youn's remorse is evident to her friends and family. Additionally, the Court should also consider the non-violent nature of this offense. See 28 U.S.C. § 994(j) (stating that prison is generally inappropriate in "cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense").

**2.      18 U.S.C. § 3553(a)(2)(A): "The need for the sentence imposed …
to reflect the seriousness of the offense, to promote respect for the
law, and to provide just punishment for the offense"**

Section 3553(a)(2)(B) requires the Court to consider "the need for the
sentence imposed…to reflect the seriousness of the offense, to promote respect for
the law, and to provide just punishment for the offense." The purposes set forth in
§ 3553(a)(2)(A) are collectively referred to as "retribution," which has been
defined as follows:

> First, retributive, or "just deserts," theory considers only the
> defendant's past actions, not her or her probable future conduct
> or the effect that the punishment might have on crime rates or
> otherwise. Second, retribution examines the actor's degree of
> blameworthiness for her or her past actions, focusing on the
> offense being sentenced…Third, the degree of blameworthiness
> of an offense is generally assessed according to two kinds of
> elements: the nature and seriousness of the harm caused or
> threatened by the crime; and the offender's degree of
> culpability in committing the crime, in particular, her degree of
> intent (mens rea), motives, role in the offense, and mental
> illness or other diminished capacity.

Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth
Amendment: "Proportionality" Relative to What?*, 89 Minn.L.Rev. 571, 590
(February 2005).

Thus, the seriousness of the offense may be lessened, for example, if the
crime was victimless or was not violent. See 28 U.S.C. § 994(j) ("The Commission
shall insure that the guidelines reflect **the general appropriateness of imposing a
sentence other than imprisonment in cases in which the defendant is a first**

**offender** who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.") (emphasis added). The offense should be considered less serious if the defendant's motives were not egregious or if the defendant's gain from the offense was minor, all of which are applicable to Ms. Youn's case. Thus, consideration of Section 3553(a)(2)(B) in Ms. Youn's case militates in favor of a variance below the calculated guideline range.

### 3. 18 U.S.C. § 3553(a)(2)(B): "The need for the sentence imposed…to afford adequate deterrence to criminal conduct"

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed … to afford adequate deterrence to criminal conduct." Indeed, while some court believe that the higher the sentence, the greater the effect in deterring others, the empirical research shows no relationship between sentence length and deterrence. The essential consideration for the Court in this case is whether a particular quantum of punishment will result in increased deterrence and, thus, a decreased chance of recidivism.

The findings are uniformly negative: there is no evidence that an increase in sentence length reduces crime through deterrence. Current empirical research on general deterrence shows that while certainty of punishment has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal

deterrent effects ... Three National Academy of Science panels … reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research, 28-9 (2006).

In one of the best studies of specific deterrence, involving federal white collar offenders in the pre-guideline era, no difference in deterrence was found even between probation and imprisonment. See David L. Weisburd, et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). The conclusion to be drawn from such studies is that offenders who are given a probationary sentence are not more likely to reoffend than those given a prison sentence.

Even the U.S. Sentencing Commission itself found "no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." See U.S. Sentencing Commission, Measuring Recidivism at 15, found here.

Specific to Ms. Youn's case, she in particular presents no threat of recidivism. Indeed, some of Ms. Youn's many supporters already recognize the

deterrence effect that just the conviction has had, and opine that Ms. Youn poses no threat of recidivism.

- **Carolina Antonini, Attorney at Law: "**Mrs. Youn's conviction has already served a great purpose; to warn other similarly situated practitioners to make careful and good choices every single time or risk the substantial personally loss of reputation, financial stability and the ability to practice one's chosen profession."

- **Tara Lee Adyanthaya, J.D., MBE:** "Now it appears that Bonnie's efforts have put in jeopardy her ability to do what she is so passionate about. That is a shame not only for her but for the many people she has helped. It is hard to watch because I experienced such vicarious joy through seeing how much she loved serving her clients and making a difference in people's lives. I know Bonnie is suffering and will continue to pay dearly for misguided efforts to help her client. The person I know did not act unlawfully for her own enrichment but because of she mistakenly perceived that she was helping a person who needed her."

**4.    18 U.S.C. § 3553(a)(2)(C): "The need for the sentence imposed … to protect the public from further crimes of the defendant"**

Section 3553(a)(2)(C) requires the Court to consider "the need for the sentence imposed ... to protect the public from further crimes of the defendant." This factor is focused on both a defendant's risk of recidivism and the danger posed by a defendant, if any. This consideration "is particularly important for those offenders whose criminal histories show repeated serious violations of the law." S.Rep. No. 225, 98th Cong. 1st Sess. at 76, reprinted in 1984 USCCAN at 3275. However, it is not so important for (1) first offenders, (2) those who have little risk

of recidivism, (3) those whose offense is non-violent, or (4) those who have a strong potential for rehabilitation; **all four factors apply to Ms. Youn**.

Taken together, these factors argue in favor of a sentence far less than the guideline range. As set forth below, this Court should consider a below-guideline sentence in light of this purpose because Ms. Youn poses no risk to the public as supported by the statistics on recidivism. Given Ms. Youn's background and characteristics, it is very unlikely that he will recidivate.

The U.S. Sentencing Commission has released three studies on recidivism: *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, (May 2004) ("Measuring Recidivism"),[3] *Recidivism and the 'First Offender,'* (May 2004),[4] and *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, (Jan. 4, 2005).[5]

These studies demonstrate that certain aspects of the sentencing guidelines overstate the risk of recidivism. They also show that the following factors – which

---

[3] http://www.ussc.gov/Research_and_Statistics/Research_Publications/2004/200405_Recidivism_Criminal_History.pdf

[4] http://www.ussc.gov/Research_and_Statistics/Research_Publications/2004/200405_Recidivism_First_Offender.pdf

[5] http://www.ussc.gov/Research_and_Statistics/Research_Publications/2005/200501 04_Recidivism_Salient_Factor_Computation.pdf

the guidelines prohibit or discourage courts from granting departures on such grounds – correlate with reduced recidivism:

- Employment: Stable employment in the year prior to arrest is associated with a lower risk of recidivism (19.6%) than for those who are unemployed (32.4%). <u>See</u> *Measuring Recidivism*, p. 12.

- Age: Age is a powerful component of recidivism prediction, which the Guidelines do not take into account. "Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50. <u>Id</u>. at 12.

- Family: Recidivism rates are lower for defendants who are married (13.8%) than if never married (32.3%). <u>Id</u>.

- Education: Recidivism rates decrease with increasing educational level (no high school (31.4%), high school (19.3%), some college (18%), college degree (8.8%). <u>Id</u>.

- Abstinence from drug use: Recidivism rates are lower for those without illicit drug use in the year prior to the offense (17.4%) than those who used illicit drugs in the year prior to the offense (31%). <u>Id</u>. at 13.

- Sentence Type - probation, alternatives, or prison: Offenders are most likely to recidivate (25.6%) when their sentence is a straight prison sentence. Of those offenders sentenced to a probation only sentence, 15.1% recidivate. <u>Id</u>. at 13.

- First time offenders: In 2004, first time offenders are more likely to be involved in less dangerous offenses and their offenses involve fewer indicia of culpability, such as no use of violence or weapons, no bodily injury, a minor role or acceptance of responsibility. They are also more likely than offenders with criminal histories to have a high school education, to be employed, and to have dependents. Further supporting alternatives to prison for this group is that offenders are most likely to recidivate when their sentence is straight prison, as opposed to probation or split sentences. However "first offender"

status is defined, the rate of recidivism (including reconviction, rearrest or revocation) for first offenders is 11.7%, which is significantly lower than the rate of 22.6% for offenders with one criminal history point, or that of 36.5% for offenders with two or more criminal history points. The rate of reconviction alone is similarly much lower: offenders with zero criminal history points have a reconviction rate of 3.5%, those with one point have a reconviction rate of 5.5%, those with two or more points have a reconviction rate of 10.3%. See supra *Recidivism and the 'First Offender'* at 13-15.

The above factors are all applicable to Ms. Youn. She is 46 years old, has a college degree and a law degree, is married, is actively searching for new employment, and does not have a criminal record. These factors are essential for the Court to consider as they demonstrate Ms. Youn's high potential for rehabilitation and extraordinarily low risk of recidivism.

- **Donna M. Wong, Retired Asst. Dean Campus Life and Director, Office of Multicultural Programs & Services Emory University**: "I am aware of Bonnie's guilty plea and that the sentencing of her will take place soon. I have always known Bonnie to be an honest, law abiding person and an ethical leader in the community. This incident is counter to Bonnie's character as I have known it for years. She is an excellent candidate for rehabilitation."

- **Guanming Fang, Lawyer:** "Bonnie may have had a lapse of judgment in the matter for which she has been charged. But in my interaction and observation of Bonnie, she has demonstrated nothing but he upmost level of professionalism and integrity. I strongly urge the Court to allow Bonnie to resume her law practice within two years and firmly believe that if she is given another opportunity, she will learn from her lessons and will serve not her clients, but also the legal profession, well."

- **Holly Geerdes, Attorney:** "We all make mistakes and errors in judgment and Ms. Youn is taking responsibility for her mistake. However, I believe the community would suffer a big loss if Ms. Youn is not allowed to remain out of Jail and eventually return to the practice of

law.  Hopefully, your Honor will take in consideration the heart and soul of Ms. Youn that we all love, admire, aspire to, and need more in our community."

- **Parag Y. Shah, Attorney:**  "As an attorney in the legal community, I can say that Bonnie has always conducted herself in a professional matter. It is without question that she meets all the criteria for someone who can be rehabilitated.  In my humble opinion, Bonnie should be allowed to practice law after the 2-year period of her suspension, assuming a suspension is even appropriate.  I say this because Bonnie has helped so many people. Any by taking her away from the practice of law or not allowing her to come back to the legal field, so many will be deprived of the most compassionate, caring and hardworking advocated this State has ever seen."

- **Robert K. Woo, Jr., Attorney:**  "In short, having known Bonnie both personally and professionally for over 21 years, I urge Your Honor to consider Bonnie's past service to her clients, to the APA bar, and to the wider APA community in setting her sentence.  I have observed Bonnie firsthand in her bar duties and in our joint pro bono work, and I have always found her demeanor and work to be highly professional.  I believe that Bonnie should be allowed to resume practicing law after her suspension, not only so that she can continue to support herself financially, but also for the good of her clients and the communities who have benefited from her selfless work over the years."

- **Alina Lee, Attorney**: "She has presented herself as a model of professionalism in the way she treats her peers and presents herself.  I know that she has tremendous rehabilitative potential and that whatever mistakes she may have made, she will do everything in her power to do right by people.  Bonnie is one of the most altruistic people I know.  She is constantly and consistently gibing her precious time to her friends, clients, and community, irrespective of all she could do for herself."

**5.    18 U.S.C. § 3553(a)(2)(D): "The need for the sentence imposed…to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"**

Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed...to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Congress directed the courts and the U.S. Sentencing Commission to use probation to accomplish rehabilitation as long as prison was not necessary to accomplish some other purpose of sentencing, and recognized that probation would often satisfy the other purposes of sentencing regardless of whether other rehabilitation was needed. In Ms. Youn's case, there are no educational, vocational, or other needs suggesting that imprisonment is appropriate.

To the contrary, there is nothing to indicate that imprisonment would be rehabilitative whatsoever. Today, there is substantial evidence that prison, by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, leads to increased recidivism, and that community treatment programs are more effective in reducing recidivism than prison treatment programs; this is particularly true for Ms. Youn.

**6.     A fine is not appropriate because Ms. Youn did not profit from the misconduct and does not have the resources to pay a fine**

As indicated in the PSR, the suggested fine ranges from $2,000.00 to $20,000.00. However, the Court should impose no fine in this case because Ms, Youn does not have the resources to pay a fine and Ms. Youn did not profit from the misconduct.

As described in the PSR, as amended by defense objections, Ms. Youn does not have the financial resources to pay a fine. She ceased practicing law on March 31, 2016. What savings she had acquired have been expended in closing her law practice, reimbursing clients for work not yet performed, paying her firm creditors, and defending this investigation for almost five years.

Perhaps more importantly, Ms. Youn did not profit from the misconduct. As detailed in the chart below, Ms. Moon Park paid $7,700.00 for the services provided, which actually is **less** than the market rate for the legal services provided. Of that amount, only $2,300.00 went to legal fees. The remaining amount was applied towards costs and expenses.

| Date | Client's Method of Payment | Description of Project-Matter | Attorney Fees | Expenses and Filing Fees |
|---|---|---|---|---|
| 12/8/2004 | Check #163 | EB-PERM Case | $2,000.00 Attorney's Fee [paid to Dixit & Youn] | $1,000.00 Advertising Fee |
| 12/8/2004 | Check #162 | I-765 Work permit renewal as E-2 spouse | | $175.00 USCIS Filing Fee |

| 7/5/2006 | Check #231 | I-765 Work permit renewal | $100.00 Attorney's fee [paid to Dixit & Youn] | $180.00 USCIS Filing Fee |
| 6/18/2008 | Money Order #11855076401 | I-765 Work permit renewal | $100.00 Attorney's fee | $340.00 USCIS Filing Fee E-Filed |
| 12/22/2008 | Cash Deposit | I-140, I-485/765/131 Case | $100.00 Attorney's Fee | $475 I-140 USCIS Filing Fee $3,030.00 I-485/765/131 USCIS Filing Fees for 3 Adults $100.00 Admin/Postage |
| 6/12/2009 | Credit Card | I-140, I-485/765/131 Case | | $50.00 overnight Postage $50.00 overnight Postage |
| **TOTAL** | | | **Attorney Fees: $2,300.00** | **Expenses and filing fees: $5,400.00** |

Elizabeth Shin, it appears, profited significantly from Shin's own criminal activity, but those revenues were not shared with Ms. Youn – and, indeed, Ms. Youn was unaware that Elizabeth Shin was charging Ms. Moon Park additional monies. Under these circumstances, a fine would not be appropriate. If the Court were to impose a fine, the punishment would not flow to Ms. Youn, but would rather only serve to further punish Ms. Youn's husband and family, who played no part in Ms. Youn's misconduct.

## IV.   CONCLUSION

Based upon the foregoing, Ms. Youn requests that the Court vary downward and impose a sentence of probation, as requested by the Government and outlined in the plea agreement. Ms Youn further requests that no fine be imposed, as the financial consequences of Ms. Youn's conduct and plea already has greatly exceed

the fine range and, at this point, would only serve to punish her husband. The requested sentence also promotes respect for the law, reflects the seriousness of the offense, is just punishment for her offense, and satisfies the statutory mandate to impose a sentence that is "sufficient, but not greater than necessary," to serve the purposes of sentencing. 18 U.S.C. § 3553(a).

Based on the foregoing, Ms. Youn, recognizing her guilt, respectfully requests this honorable Court grant a downward variance and impose a sentence of probation with no fine based on the principles of fundamental fairness, the advisory nature of the U.S. Sentencing Guidelines in light of United States v. Booker, the §3553 factors, and the continuing needs of Ms. Youn's family.

Respectfully submitted on this the 25th day of April, 2016.

THE RICE LAW FIRM, LLC

/s/ Richard A. Rice, Jr.

RICHARD A. RICE, JR.
GA Bar No. 603203

10 Piedmont Center, Suite 110
3495 Piedmont Rd NE
Atlanta, GA 30305
404.835.0783
404.481.3057 (fax)
rrice@trlfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing, which was prepared using Times New Roman 14 point font, was served electronically by operation of the Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

This 25th day of April, 2016.

/s/ *Richard A. Rice, Jr.*
Richard A. Rice, Jr.